Howard J. Whitehill, Jr., and Cecily S. Whitehill v. Commissioner.
Whitehill v. Commissioner
Docket No. 1850-70.
United States Tax Court
T.C. Memo 1972-101; 1972 Tax Ct. Memo LEXIS 156; 31 T.C.M. (CCH) 401; T.C.M. (RIA) 72101; May 1, 1972, Filed *156 Raymond S. Smethurst, Jr., for the petitioners. Ernest J. Wright, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency of $3,290.85 in petitioners' Federal income tax for the taxable year 1966. The sole question is the fair market value of certain real estate contributed by petitioner Howard J. Whitehill, Jr., to a qualified charitable organization. Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife and had their legal residence in Chestertown, Maryland, at the time the petition herein was filed. They filed their joint 1966 Federal income tax return with the district director of internal revenue, Oklahoma City, Oklahoma. Cecily S. Whitehill is a petitioner herein solely by virtue of having joined in that return. Any reference to petitioner herein shall be deemed to refer to Howard J. Whitehill, Jr. The real property involved herein is located approximately eight to eleven miles east of Salisbury, Maryland, and approximately twenty miles west of Ocean City, Maryland, on Maryland State Highway Route 353. It is one-half mile north of the Pittsville, *157 Maryland, town line and approximately one-and-one-half miles north of U.S. Route 50. The property consists of 1.012 acres of land and an L-shaped building with an asbestos-siding, frame structure. The building is one-story except for a small portion which has had shed dormers added to provide an apartment for living quarters. About half of the roof is wood-shingled and the other half has composition shingles. It contains 90,384 cubic feet of area and 6,941 square feet of usable floor space. The building was originally constructed in 1940 and an addition was made in 1949. As of August 1962, the property was owned by Mom Farlow's, Inc., and secured a mortgage having an unpaid principal amount of $8,794.21 and unpaid interest of $351.88. The mortgage was in default. By the time of the foreclosure sale hereinafter referred to, an additional $155.85 of unpaid interest had accrued. Mom Farlow's, Inc., had used the building as a bakery. On January 24, 1963, the property was purchased at an advertised foreclosure sale by petitioner and one Richard B. Gwathmey (hereinafter "Gwathmey") as tenants in common. An undisclosed third party had a one-third interest in the property. The purchase *158 price was $8,550 and an additional amount of $174.78 for recording cost, documentary stamps, etc., of which $7,550 was obtained by means of a loan from the First National Bank of Maryland, secured by a mortgage on the property, and the balance by means of an unsecured loan. Thereafter, petitioner and his co-owners attempted to sell the property at an offering price of $24,500. They never reduced that price. Their efforts were unsuccessful. During the period January 24, 1963 to June 29, 1966, no expenditures were made for improving, repairing, maintaining, and furnishing the property, with the exception of $30 for cleaning in 1964. As of June 29, 1966, the unpaid balance of the mortgage was $4,699.34, and, on that date, petitioner acquired Gwathmey's one-third interest by assuming the latter's share of the unpaid balance of the mortgage, to wit, $1,566.45. Also on June 29, 1966, petitioner and the undisclosed third party transferred their respective two-thirds and one-third interests in the property to 402 St. Francis de Sales Church in Salisbury, Maryland (hereinafter "the Church"). The building was empty and in mediocre condition at that time. On July 7, 1966, the mortgage *159 was paid off. The Church immediately listed the property for sale through a real estate broker at an offering price of approximately $22,000. The broker advertised the property but received no offers to purchase. He solicited an offer from one Samuel M. Goldman, who conducted an airplane parts business some miles away, suggesting that Goldman could use the property for dead storage space. After inspecting the property, Goldman purchased it on September 20, 1966 for $4,000. One C. Douglas Sergeant appraised the property as of June 1, 1966 at $759.00 for the land and $16,269.17 for the improvements. The appraisal of the improvements was arrived at solely on the basis of reproduction cost, at $8.00 per square foot, less 30 percent for usual wear and tear and 40 percent for functional inutility and location, since he considered capitalization and comparable sales methods inappropriate. In 1966, the property was reassessed downward from $11,974 to $9,570. In arriving at our decision herein, we have carefully considered all of the evidence submitted. In particular, we have taken into account the indications that the foreclosure sale in 1962 was a "forced" sale; that petitioner's *160 purchase of Gwathmey's interest was prompted in part by the latter's desire to "get off the hook"; that the Church disposed of the property promptly because it was, in some degree, interested in getting cash; the inhibiting factor of difficulty on the part of the Church in finding a purchaser and the countervailing factor that the location and condition of the property contributed to such inhibition; and the limitations of reproduction cost less depreciation as the sole measure of value. On the basis of the foregoing factors and other considerations which we deem it unnecessary to detail, we hold that the fair market value of the property on June 29, 1966 was $9,000. [1]
*161 Decision will be entered under Rule 50. Footnotes
1. We are constrained to repeat an observation made on another occasion - one which, we might add, we unsuccessfully sought to persuade the parties herein to apply. In , we stated: Too often in valuation disputes the parties have convinced themselves of the unalterable correctness of their positions and have consequently failed successfully to conclude settlement negotiations - a process clearly more conducive to the proper disposition of disputes such as this.↩